## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JONATHAN RUDENBERG, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N16A-02-006 RRC |
| | ) | |
| THE CHIEF DEPUTY ATTORNEY | ) | |
| GENERAL OF THE DELAWARE | ) | |
| DEPARTMENT OF JUSTICE AND | ) | |
| THE DELAWARE DEPARTMENT OF | ) | |
| SAFETY AND HOMELAND | ) | |
| SECURITY, DIVISION OF STATE | ) | |
| POLICE,[1] | ) | |
| Appellees. | ) | |

Submitted: October 31, 2016
Decided: December 30, 2016

On Consideration of the "Statement of Interest of the United States"
Filed by the United States.

**STATEMENT OF INTEREST TO BE CONSIDERED IN PART;
NOT TO BE CONSIDERED IN PART.**

# <u>MEMORANDUM OPINION</u>

Ryan Tack-Hooper, Esquire and Richard H. Morse, Esquire, American Civil Liberties Union Foundation of Delaware, Wilmington, Delaware, Attorneys for Appellant Jonathan Rudenberg.

---

[1] Although the caption as originally filed read, in relevant part, "Delaware Department of Justice, the Chief Deputy Attorney General," the Court understands there to be only one Department of Justice entity, the Chief Deputy Attorney General. The Court has accordingly revised the caption for clarification.

1

Joseph C. Handlon, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, Attorney for Appellee the Chief Deputy Attorney General of the Delaware Department of Justice.

Patricia Davis Oliva, Esquire and Rae Meredith Mims, Esquire, Deputy Attorneys General, Delaware Department of Justice, Dover, Delaware, Attorneys for Appellee Delaware Department of Safety and Homeland Security, Division of State Police.

COOCH, R.J.

## I.  INTRODUCTION

Jonathan Rudenberg ("Appellant"), identified as a "Delaware small business owner and security researcher,"[2] has appealed a decision of the Chief Deputy Attorney General in the Delaware Department of Justice to this Court pursuant to the Delaware Freedom of Information Act ("FOIA").[3]  In her decision, the Chief Deputy Attorney General determined that Appellant was not entitled to certain information that he had requested from the Division of State Police ("DSP") pertaining to its use of cell-site simulators.  However, the Chief Deputy Attorney General determined that the DSP must produce a non-disclosure agreement referred to by the DSP that prevents the production of the information Appellant requested.

After briefing on the appeal was completed, the United States Department of Justice filed a "Statement of Interest of the United States" ("Statement of Interest") pursuant to 28 U.S.C. § 517 in this appeal.  Attached *inter alia* to the Statement of Interest was a factual "Declaration" of FBI Special Agent Russell D. Hansen.  In stating its position in its Statement of Interest, the United States proffered some facts not in the record in this case.  The Court must now determine to what extent it

---

[2] Appellant's Opening Br. at 4.
[3] 29 *Del. C.* § 10001, *et seq.*  Specifically, Appellant appeals the decision embodied in Del. Op. Att'y Gen. 15-IB14 (Dec. 29, 2015).

should consider the Statement of Interest, including its new facts, in connection with the underlying appeal which is required to be "on the record."[4]

This is an issue of first impression in Delaware. The Court holds that it is not appropriate to consider new facts raised by the Statement of Interest, as this is a FOIA appeal "on the record." However, and consistent with the parties' positions, the Court will consider the Statement of Interest only to the extent it makes policy arguments that are supported by facts established in the proceedings below. Accordingly, the Court **WILL CONSIDER IN PART** and **WILL NOT CONSIDER IN PART** the Statement of Interest of the United States in connection with the forthcoming decision on the underlying appeal.

## II. FACTUAL AND PROCEDURAL HISTORY[5]

### A. *Appellant's FOIA Request to the Division of State Police*

On May 15, 2015, Appellant had requested information pursuant to FOIA from the DSP regarding its use of cell-site simulator devices, commonly known as "Stingrays."[6] Specifically, Appellant requested nine categories of information pertaining to the DSP's use of cell-site simulators:

> 1. Records regarding the State Police's acquisition of cell site simulators, including invoices, purchase orders, contracts, loan agreements, solicitation letters, correspondence with companies providing the devices, and similar documents. In response to this request, please include records of all contracts, agreements, and communications with Harris Corporation[, the company with which the FBI contracted to have the cell-site simulators manufactured].

---

[4] 29 *Del. C.* § 10005(e).

[5] The facts and procedural history relating to this preliminary issue of the Court's consideration of the "Statement of Interest of the United States" set forth herein are not as extensive as will be set forth in the later opinion of this Court.

[6] Appellant made his request through an online FOIA request filing system called MuckRock. http://www.MuckRock.com (last visited Dec. 30, 2016).

3

2. Records regarding any arrangement or agreement between the State Police and other law enforcement agencies in Delaware to share the use of cell site simulators, or any offers by the State Police to share the use of cell site simulators with other law enforcement agencies in Delaware.

3. All requests by the Harris Corporation or any other corporation, or any state or federal agencies, to the State Police to keep confidential any aspect of the State Police's possession and use of cell site simulators, including any non-disclosure agreements between the State Police and the Harris Corporation or any other corporation, or any state or federal agencies, regarding the State Police's possession and use of cell site simulators.

4. Policies and guidelines of the State Police governing use of cell site simulators, including restrictions on when, where, how, and against whom they may be used, limitations on retention and use of collected data, guidance on when a warrant or other legal process must be obtained, and rules governing when the existence and use of cell site simulators may be revealed to the public, criminal defendants, or judges.

5. Any communications or agreements between the State Police and wireless service providers (including AT&T, T-Mobile, Verizon, Sprint Nextel, and U.S. Cellular) concerning use of cell site simulators.

6. Any communications, licenses, or agreements between the State Police and the Federal Communications Commission or the Delaware Public Service Commission concerning use of cell site simulators.

7. Records reflecting the number of investigations in which cell site simulators were used by the State Police or in which cell site simulators owned by the State Police were used, and the number of those investigations that have resulted in prosecutions.

8. Records reflecting a list of all cases, with docket numbers if available, in which cell site simulators were used as part of the underlying investigation by the State Police or in which cell site

4

simulators owned by the State Police were used as part of the underlying investigation.

9. All applications submitted to state or federal courts for search warrants or orders authorizing use of cell site simulators by the State Police in criminal investigations or authorizing use of cell site simulators owned by the State Police in criminal investigations, as well as any warrants or orders, denials of warrants or orders, and returns of warrants associated with those applications. If any responsive records are sealed, please provide documents sufficient to identify the court, date, and docket number for each sealed document.[7]

The DSP denied Appellant's request for information, citing a nondisclosure agreement between the DSP and the United States Federal Bureau of Investigation. The DSP advised Appellant that the FBI owns the cell-site simulator technology, and may give state and local law enforcement agencies authorization to use the technology. The DSP informed Appellant that the FBI required it to enter into a nondisclosure agreement as a condition on the FBI granting permission for the DSP to use the devices. Finally, the DSP advised Appellant that "[a] better option may be to direct your requests to the FBI, Harris Corporation, or Boeing[, another manufacturer of the devices]."[8]

### B. *Appellant Petitions the Attorney General to Review the DSP's Response to His Request*

Appellant then petitioned the Attorney General pursuant to 29 *Del. C.* § 10005(e) to review the DSP's response to his FOIA request. The Attorney General referred the request to the Chief Deputy Attorney General, also pursuant to 29 *Del. C.* § 10005(e).

The DSP then filed a response to Appellant's submission. In its response, the DSP stated that, "in an effort to be cooperative,"[9] the DSP contacted the FBI to

---

[7] Appellant's Opening Br. Ex. A at 1-2.
[8] R. at 4.
[9] R. at 14.

more fully respond to Appellant's request. The DSP further explained to the Chief Deputy Attorney General that, after communicating with the FBI, the FBI permitted the DSP to produce records under Categories One and Four so long as the technical specifications of the devices were redacted. With respect to the other categories, the DSP stated that the information sought either did not exist or was protected from disclosure by the non-disclosure agreement.

After reviewing Appellant's petition and the DSP's submission to the Chief Deputy Attorney General in support of its response to Appellant's FOIA request, the Chief Deputy Attorney General determined that the information requested was protected by the nondisclosure agreement, but that the DSP should produce the nondisclosure agreement itself.[10] The DSP then did so. Appellant then appealed the decision of the Chief Deputy Attorney General to this Court under 29 *Del. C.* § 10005(e).

### C. *Appellant Appeals the Chief Deputy Attorney General's Determination to this Court*

Appellant filed his Notice of Appeal on February 26, 2016 from the December 29, 2015 "determination" of the Chief Deputy Attorney General. Appellant makes four claims. First, he asserts that "[t]he Chief Deputy Attorney General erred by failing to give [Appellant] notice and an opportunity to respond to the arguments and allegations contained in the State Police submission."[11] Second, Appellant claims that "[t]he Chief Deputy [Attorney General] erred by failing to order the State Police to describe the search for responsive records."[12] Third, Appellant argues that "[t]he Chief Deputy [Attorney General] erroneously found that the State Police had represented that there were no court orders or related applications concerning the use of Stingrays" in response to paragraph nine of his FOIA request.[13] Finally, Appellant contends that "[t]he Chief Deputy [Attorney General] erred by failing to order that the State Police explain what legal authority

---

[10] Del. Op. Att'y Gen. 15-IB14 (Dec. 29, 2015).
[11] Appellant's Opening Br. at 15.
[12] Appellant's Opening Br. at 16.
[13] Appellant's Opening Br. at 20.

justified the non-disclosure of each responsive record or part of a responsive record."[14]

D. *The United States Department of Justice Files a "Statement of Interest of the United States"*

1. The United States Department of Justice Submits Its Statement of Interest of the United States Pursuant to 28 U.S.C. § 517

Oral argument on this appeal was scheduled for October 5, 2016. However, on September 28, Counsel in the Civil Division, Federal Programs Branch of the United States Department of Justice in Washington, D.C. filed a "Statement of Interest of the United States" pursuant to 28 U.S.C. § 517 in this case. Section 517 provides:

> The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.

In its Statement of Interest, the United States Department of Justice asserts its interest in keeping the information requested by Appellant confidential. First, the Statement of Interest sets forth a factual foundation for understanding the use and restrictions on cell-site simulators. Next, the Statement of Interest discusses the procedural history of Appellant's FOIA request. Lastly, the Statement of Interest argues why the information requested by Appellant should not be disclosed under Delaware's FOIA. Specifically, the United States Department of Justice argues that the information sought by Appellant "is specifically exempted from

---

[14] Appellant's Opening Br. at 21. The Delaware Department of Justice submitted a letter to the Court on May 26, 2016, in which it advised that the Chief Deputy Attorney General of the Delaware Department of Justice takes no position on the appeal, since the only two adverse parties are Appellant and the DSP. Appellant has not contested this position.

disclosure by the Federal FOIA, 5 U.S.C. § 552" and "by the common law under the law enforcement privilege."[15]

### 2. The Declaration of Special Agent Russell D. Hansen

Attached *inter alia* to the Statement of Interest was the September 27, 2016 "Declaration of Russell D. Hansen" ("Hansen Declaration").[16] In his twelve-page declaration, Special Agent Hansen stated the FBI's position on the disclosure of the information Appellant seeks. Special Agent Hansen described at some length the development of cell-site simulators, the function and use of the devices, the legal restrictions governing the devices, and the nondisclosure agreements entered into by the federal and state law enforcement agencies. Special Agent Hansen also set forth the procedural history of Appellant's FOIA request. Finally, Special Agent Hansen discussed the position of the "Federal Government"[17] on the disclosure of the information Appellant seeks, including various risks of harm that could come from disclosure of this information sought by Appellant in his FOIA request. For example, Special Agent Hansen specifically discussed how "criminals and terrorists" could use the information "to develop defensive technology, modify their behaviors, and otherwise take countermeasures designed to thwart the use of the technology in order to evade detection by law enforcement and circumvent the law."[18]

### E. *The Court is Presented with a Preliminary Issue Concerning Whether or to What Extent it can Consider the Statement of Interest*

---

[15] Statement of Interest of the United States, Trans. No. 59624044, *Rudenberg v. Delaware Department of Justice et al.*, C.A. No. N16A-02-006, at 8, 12 (Del. Super. Sept. 28, 2016).

[16] Special Agent Hansen avers that he is "currently assigned as the Chief, Tracking Technology Unit, Operational Technology Division in Quantico, Virginia." Declaration of Russell D. Hansen, Trans. No. 59624044, *Rudenberg v. Delaware Department of Justice et al.*, C.A. No. N16A-02-006 RRC, at 3-5 (Del. Super. Sept. 28, 2016) [hereinafter Hansen Declaration]. He states that his declaration is "based upon [his] personal knowledge, upon information provided to [him] in [his] official capacity, and upon conclusions and determinations reached and made in accordance therewith." *Id.*

[17] Hansen Declaration at 8.

[18] Hansen Declaration at 9.

In light of the United States' submission, the Court held a scheduling teleconference with counsel for all parties on September 30 to discuss how the Court should proceed in light of the Statement of Interest filed just seven days before the oral argument on October 5. At the scheduling teleconference, the Court advised the parties that, before reaching the issues raised in the substantive appeal, the Statement of Interest presented the Court with a preliminary issue: whether, or to what extent, it can consider a "Statement of Interest of the United States" submitted by the United States Department of Justice pursuant to 28 U.S.C. § 517 in the context of this FOIA appeal required to be "on the record."[19]

The Court thus requested additional briefing on three discrete issues: (1) whether the Court should consider the newly proffered facts in the Hansen Declaration in this "on the record" appeal; (2) if the Court does consider this declaration, whether the Appellant may take the deposition of Special Agent Hansen as Appellant has requested; and (3) whether the appeal in any event should be remanded to the Chief Deputy Attorney General for further consideration by her of the facts proffered by Special Agent Hansen. The Court indefinitely postponed the scheduled oral argument in order to resolve these preliminary issues.

## III. THE PARTIES' CONTENTIONS ON THESE PRELIMINARY ISSUES

### A. *Appellant's Contentions*

Appellant contends that "[t]he [United States] DOJ should not be permitted to submit new evidence into this appeal without leave of the parties[.]" However, Appellant nevertheless takes the position that he is "willing to grant [leave] so long as [he] can appropriately explore and contest the evidence" by taking the deposition of Special Agent Hansen, and then submitting a "counter-declaration."[20] Alternatively, Appellant asserts that "if Appellant is not permitted to explore the basis for the FBI's assertions, then Appellant asks the Court to enforce the general rule that a non-party is not permitted to insert new evidence into a pending appeal."[21] Finally, Appellant argues that "[t]he Court should not remand the matter

---

[19] 29 *Del. C.* § 10005(e).
[20] Appellant's Letter Oct. 12, 2016 Br. at 2.
[21] Appellant's Letter. Br. at 1.

9

to the Chief Deputy [Attorney General]," as a remand would "unduly delay the resolution of this matter for little substantive benefit."[22]

## B. *The Division of State Police's Contentions*

The DSP contends that "[t]he Court may and should consider the Statement of Interest of the United States, including any facts raised in the declaration of Russell D. Hansen,"[23] and asserts that "[t]he United States routinely files, and courts accept—without controversy—such Statements of Interest in various types of litigation."[24] The DSP argues that "[t]he Court's consideration of the Statement of Interest does not permit Appellant to conduct additional discovery," as "[t]he United States files Statements of Interest for a variety of reasons, but often specifically to 'correct the record' of a case in which it is not a party."[25] Further, the DSP asserts "[i]f the Court has additional questions of Special Agent Hanson, or seeks to further explore the information provided in the Declaration, the Declaration indicates the Special Agent is available for an *ex parte in camera* communication."[26]

The DSP agrees with Appellant that "[t]he Court should not remand this matter to the Chief Deputy Attorney General," as "[e]stablishing the precedent of remand in a FOIA appeal will . . . not effectuate the swift administration of these types of appeals going forward."[27]

---

[22] *Id.* at 3-4.
[23] Appellee's Oct. 31, 2016 Letter Br. at 1.
[24] *Id.* at 2.
[25] *Id.* at 4.
[26] *Id.* at 6. The DSP does not set forth its position on whether Appellant may, as he requests, submit a "counter-declaration," assuming this court permits Special Agent Hansen's deposition.
[27] Appellee's Letter Br. at 7.

# IV. DISCUSSION

## A. *The Court Will Not Consider the "Statement of Interest of the United States" to the Extent it Relies on Facts Set Forth for the First Time in Special Agent Hansen's Declaration*

### 1. Overview of the "Statement of Interest of the United States" in This Case

In "attend[ing] to the interests of the United States,"[28] the officer of the Department of Justice "sent" to represent its interests will typically file a submission in which the interests of the United States in the pending matter are articulated. Courts frequently treat the submissions made by the United States under § 517 as *amicus curiae* submissions.[29] The United States has also filed declarations of federal government agents with its § 517 submissions.[30] In the case at bar, the DSP accurately observed in its October 31 letter to the Court that "it is uncontested by the parties that this Court may and should consider the issues and arguments raised by the United States in its Statement of Interest to the extent that any facts at issue in the declaration of Russell D. Hansen are not implicated."[31]

### 2. Consideration by the Court of a Statement of Interest in This Delaware Freedom of Information Act Appeal "on the record"

Appellant argues that the Court should not consider Special Agent Hansen's Declaration unless Appellant is permitted to take his deposition, and then submit

---

[28] 28 U.S.C. § 517.

[29] *See, e.g.*, *Georges v. United Nations*, 834 F.3d 88, 92 (2d Cir. 2016) (providing "the Executive Branch 'submit[t]ed an *amicus curiae* brief, pursuant to 28 U.S.C. § 517 . . . .'"); *Williams v. City of New York*, 121 F.Supp.3d 354, 365 n.12, 370 n.18 (S.D.N.Y. 2015) (describing the United States' submission under 28 U.S.C. § 517 as an *amicus curiae* brief).

[30] *See, e.g.*, *Ungaro Benages v. Dresdner Bank AG*, 2003 WL 25729923, at *1 n.6 (S.D. Fla. Feb. 20, 2003) (citing the "Declaration of Stuart E. Eizenstat attached to the Statement of Interest of the United States" to support the court's factual findings on a "Motion to Strike the Statement of Interest of the United States").

[31] Appellee's Letter Br. at 2.

his own "counter-declaration."[32] In 29 *Del. C.* § 10005(e), the adjudicative process for alleged violations of Delaware's FOIA, Delaware law provides: "Regardless of the finding of the Chief Deputy, the petitioner or the public body may appeal the matter *on the record* to Superior Court."[33]

### i. The Scope of "On the Record" Review in Appeals to the Superior Court in Other Contexts

The Court has found no Delaware case directly on point allowing new evidence in this type of FOIA appeal, probably due in part to the recency of the enactment of the statute regarding appeals to the Superior Court. However, this Court, albeit in another context, has previously discussed the meaning of "on the record" review. In *Ehrlich v. Harris Jewelers Co.*, an appeal from a decision of the Unemployment Insurance Appeal Board, this Court stated that "the review here is strictly limited. The court has no authority, on appeal . . . to make independent findings of fact."[34] Further, this Court stated its responsibilities with respect to consideration of facts:

> [One of] [t]he court's . . . dut[ies] on appeal is to decide whether the Board correctly applied the law to the facts, as the Board found the facts to be. Again, the court has no authority on appeal to make its own factual findings and to redecide the case as it sees fit.[35]

---

[32] Appellant's Oct. 12, 2016 Letter Br. at 1.

[33] 29 Del. C. § 10005(e) (emphasis added). This is a relatively recent amendment to Delaware's Freedom of Information Act, effective July 15, 2010. 77 Del. Laws ch. 400 (2010).

[34] *Ehrlich v. Harris Jewelers Co.*, 2003 WL 22048219, at *1 (Del. Super. Aug. 26, 2003). *See also Hubble v. Delmarva Temporary Staffing, Inc.*, 2003 WL 1980811, at *2 n.3 (Del. Super. Apr. 28, 2003) (providing: "The Court ignores any new facts or evidence Appellant submits since this review [of a UIAB decision] is on the record only.").

[35] *Id.* Further, the Delaware Supreme Court has held that the function of this Court when deciding a case on appeal from the Industrial Accident Board is similar to the function of the Delaware Supreme Court. *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965). The Delaware Supreme Court held that it will not consider facts that were not established in the record below. *Hubbard v. Unemployment Ins. Appeal Bd.*, 352 A.2d 761, 763 (Del. 1976). Accordingly, the scope of this Court's factual review is bound by the same restrictions as the Delaware Supreme Court.

Moreover, in the analogous context of "Appeals from Certain Commissioners, Boards and Courts," Superior Court Civil Rule 72(g) requires that "[a]ppeals shall be heard and determined by the Superior Court *from the record of proceedings below*, except as may be otherwise expressly provided by statute" (emphasis added). The *Delaware Appellate Handbook* states that, in the context of an appeal to the Superior Court from a decision in a civil action in the Court of Common Pleas, "[a]ppeals from the Court of Common Pleas are 'on the record' and shall not be tried *de novo*."[36] Likewise, in an appeal governed by the procedural rules of the Administrative Procedure Act,[37] the *Delaware Appellate Handbook* provides: "The appeal under the APA is heard on the record and not *de novo* . . . . The parties to an appeal are bound by the record before the agency."[38] Although these scopes of review are not specifically stated to be applicable to an appeal from a FOIA determination made by the Chief Deputy Attorney General, they provide analogous support for the Court's interpretation of the "on the record" scope of review set forth in § 10005(e).

### ii. Delaware Courts May Consider New Facts for the First Time on Appeal when Statutorily Authorized

This Court may, however, consider additional facts in the context of an appeal from an administrative agency when statutorily authorized. For example, the Superior Court is statutorily authorized by 9 Del. C. § 1314(e) to consider additional facts in appeals from the New Castle County Board of Adjustment. That statute provides: "If, upon the hearing, it shall appear to the Court that testimony is necessary for the proper disposition of the matter, it may take evidence."[39]

Here, 29 *Del. C.* § 10005(e) provides no express instruction that the Court may consider additional evidence. Section 10005(e) only provides that the appeal is to be taken "on the record." Accordingly, as 29 *Del. C.* § 10005(e) contains no express language comparable to that in, *e.g.*, 9 *Del. C.* §1314(e), this Court cannot

---

[36] *Delaware Appellate Handbook*, § 19.07, at 19-iv (2d ed. 1996); 10 *Del. C.* § 1326(c).
[37] 29 *Del. C.* § 10142.
[38] *Delaware Appellate Handbook*, § 19.13, at 19-xvi (2d ed. 1996).
[39] 9 *Del. C.* § 1314(e).

consider additional facts in this Freedom of Information Act appeal "on the record."

### iii. Special Agent Hansen's Declaration Contains Facts that Cannot be Considered in an Appeal "On the Record"

Here, Appellant correctly argues that the Hansen Declaration adds new facts that were not a part of the record on appeal. Appellant now wishes to take Special Agent Hansen's deposition and then submit his own "counter-declaration" should the Court consider the new facts proffered in the Hansen Declaration. But, in his October 12, 2016 letter to the Court, Appellant stated: "if Appellant is not permitted to explore the basis for the FBI's assertions, then Appellant asks the Court to enforce the general rule that a non-party is not permitted to insert new evidence into a pending appeal."[40] (The Court notes that not only is a "non-party" prevented from inserting new evidence into a pending appeal, but the same is also true for parties to the appeal.)[41] As it is clear to the Court that it cannot consider new facts set forth for the first time in this FOIA appeal "on the record," the Court will not consider the new facts set forth in the Declaration. Accordingly, Appellant's request to take Special Agent Hansen's deposition and submit a "counter-declaration" is moot.

### iv. The Record Indicates that the FBI had the Opportunity to Work with the DSP in Establishing the Factual Foundation for Responding to Appellant's FOIA Request

Notably, some of the important facts set forth in the Hansen Declaration are also contained in the record below, evidencing the way in which the FBI had the opportunity to assist the DSP in laying the factual foundation for the DSP to respond to Appellant's FOIA request. The similar facts are set forth in two documents: a letter dated May 23, 2012 from the FBI to the DSP regarding the

---

[40] Appellant's Letter. Br. at 1.
[41] *See, e.g.*, *Draper v. State*, 146 A.2d 796, 800 (Del. 1958) (providing that the defendant could not supplement the record before the Delaware Supreme Court with a factual affidavit suggesting his innocence).

"non-disclosure obligations,"[42] and the DSP's July 6, 2015 submission to the Chief Deputy Attorney General.[43] In its May 23, 2012 letter from the FBI to the DSP, the FBI set forth the non-disclosure agreement to which the DSP would be bound if they wished to use the cell-site simulator technology. In the letter, the FBI stated:

> disclosing the existence of and the capabilities provided by such equipment/technology to the public would reveal sensitive technological capabilities possessed by the law enforcement community and may allow individuals who are the subject of investigation wherein this equipment/technology is used to employ countermeasures to avoid detection by law enforcement.[44]

Additionally, the DSP discussed the FBI's position in its July 6, 2015 submission to the Chief Deputy Attorney General. In that submission, the DSP stated, with respect to the use and capabilities of cell-site simulators, "[c]ell site simulators allow law enforcement to gather information about all cell phones in a given area and to track individuals through their cell phone. . . . Cell phones bounce off cell site simulators as they would a normal cell tower, allowing law enforcement to collect information."[45] With respect to the nondisclosure agreements, the DSP asserted in its submission that "[c]ell site simulator technology is held exclusively by the FBI through two suppliers—Boeing and the Harris Corporation and provided only to law enforcement agencies upon an agreement to hold all information relating to the technology confidential."[46] Accordingly, facts similar to those pertaining to the use, restrictions, and non-disclosure agreements set forth in Special Agent Hansen's Declaration exist in the record below.

### v. The Authorities Cited by the DSP in Support of Its Position that the Court Should Consider the Declaration are Distinguishable in this Case

---

[42] R. at 30.
[43] R. at 11.
[44] R. at 30.
[45] R. at 11.
[46] R. at 12.

15

In support of its position that the Court should consider the Hansen Declaration, the DSP relies on four cases from other jurisdictions in which declarations submitted in conjunction with a Statement of Interest were considered. However, in all of these cases, the Statements of Interest with their attached declarations were submitted at the trial court level while the litigation was still in the fact finding stage.[47]

Thus, in *Ungaro-Benages v. Dresdner Bank A.G.*, the trial court considered a declaration submitted with a Statement of Interest under 28 U.S.C. § 517 while limited discovery was proceeding on a pending motion for summary judgment.[48] Similarly, in *Hunter v. District of Columbia*, the trial court considered a declaration in the context of a motion to dismiss the plaintiffs' complaint.[49] In *Sokolow v. Palestine Liberation Organization*, the declaration was submitted to the trial court in conjunction with the plaintiffs' motion to require a bond after a judgment was entered in favor of the plaintiffs.[50] Finally, in *Faith Action for Cmty. Equity v. Hawaii Dep't of Transp.*, the declaration was submitted to the trial court in the context of a motion to dismiss on grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted.[51] Thus, in all four cases relied on by the DSP, it appears that the declarations were proffered while the litigation was still in the fact-finding stages under the purview of the trial court. Such is not the case here in this appeal "on the record."

---

[47] In two of the cases, *Sokolow v. Palestine Liberation Organization* and *Faith Action for Cmty. Equity v. Hawaii Dep't of Transp.*, no decision was apparently ever issued by either of the two courts showing that the court considered a submission made pursuant to 28 U.S.C. § 517.

[48] 2003 WL 25729923, at *1 (S.D. Fla. Feb. 20, 2003). The motion for summary judgment in this case had initially been filed as a motion to dismiss, but the motion to dismiss relied on evidence not contained in the pleadings. Accordingly, the court converted the motion to a motion for summary judgment and permitted the parties to take limited discovery with respect to the arguments set forth in the motion.

[49] 64 F. Supp. 3d 158, 165 (D.C. Cir. 2014).

[50] Declaration of Anthony J. Blinken,, *Sokolow v.Palestine Liberation Organization* (No. 1:04-cv-00397-GBD-RLE) (S.D.N.Y. 2015). Although an order was issued regarding the plaintiff's motion, no written decision was apparently issued in which the Court expressly considered the declaration.

[51] Statement of Interest of the United States of America, Ex. 1, *Faith Action for Cmty. Equity v. Hawaii Dep't of Transp.* (No. 1:13-cv-00450-SOM-RLP) (D. Haw. 2014).

16

The DSP also cites *U.S. ex rel. Budike v. PECO Energy* for the proposition that "[t]he United States files Statements of Interest for a variety of reasons, but often specifically to 'correct the record' of a case in which it is not a party."[52]  In *Budike*, the United States filed its submission under § 517 to "correct the record" with respect to a statement made by the plaintiff in his memorandum to the court:

> The Government seeks to clarify Relator's statement that "[t]he U.S. Attorney's office informed the Relator that if he chose to amend his Complaint that it might permit his case to move forward."  The Government explains [in its Statement of Interest] that it "did not attempt to condition the relator's right to proceed upon amendment of the complaint."  Rather, the Government's counsel "suggested to relator's counsel that since she was not the counsel who had originally filed the action on relator's behalf, she might wish to examine the then-filed complaint and to determine for herself whether it met the standards of particularity in Rule 9(b)."[53]

Accordingly, in *Budike*, the United States sought to make a factual correction to the record.  Moreover, in *Budike*, the § 517 submission was filed while the case was in the fact finding stages before the trial court, not in the context of an appeal "on the record."

As the scope of the Court's review here is "on the record," the Court has harmonized its consideration of the Statement of Interest with the procedural rules of Delaware's FOIA.  In this appeal "on the record," this Court is not authorized to allow the United of States to "correct the record."  Moreover, neither the United States nor the DSP has advised that they seek to correct any misstatement of fact in the record below.  Rather, the Statement of Interest in this case presents some additional facts to the Court that were not presented to the Chief Deputy Attorney General.  Accordingly, the DSP's reliance on *Budike* is inapposite, as the Court is

---

[52] Appellee's Letter Br. at 4.
[53] *U.S. ex rel. Budike v. PECO Energy*, 897 F.Supp.2d 300, 313 (E.D. Pa. 2012).

not authorized to permit the United States or a party to "correct the record" below.[54]

### vi. The Court Will Consider the Statement of Interest to the Extent it Makes Policy Arguments Supported by Facts on the Record

In its Statement of Interest, the United States relies on Special Agent Hansen's Declaration in two ways. First, the United States relies on Special Agent Hansen's Declaration to set forth the background for its submission.[55] Second, the United States uses the Declaration to argue the policy reasons for which it believes the information Appellant seeks should not be disseminated to the public.[56] Accordingly, to the extent the Statement of Interest of the United States relies on factual assertions made in Special Agent Hansen's Declaration are not in the record on appeal, the Court will not consider the Statement of Interest, as the scope of review on appeal is "strictly limited" to the facts in the record.[57] However, to the extent the Statement of Interest of the United States asserts policy arguments supported by facts contained in the record below, the Court will consider those policy arguments in reaching its decision on the substantive appeal.[58] As the DSP stated in its letter brief, "it is uncontested by the parties that this Court may and

---

[54] However, this is not to say that the Court cannot theoretically make its own contradictory findings of fact even under a potentially deferential standard of review if it concludes that the findings of the Chief Deputy Attorney General are "clearly wrong." *See Levitt v. Bouvier*, 287 A.2d 671 (Del. 1972). However, the Court has requested supplemental briefing, *infra* page 21, on the applicable standard of review in this appeal.

[55] Statement of Interest of the United States, at 3-5.

[56] *Id.* at 9-10, 12.

[57] *Ehrlich*, 2003 WL 22048219, at *1. Assuming, *arguendo*, that the Court were to consider Special Agent Hansen's declaration, this Court notes that discovery—which Appellant seeks to conduct if the Court were to consider the Declaration—"is rare in FOIA cases." *Judicial Watch, Inc. v. Department of State*, Civil Action No. 13-cv-01363-EGS, at *8 (D.D.C. May 4, 2016). In *Judicial Watch, Inc.*, the United States District Court for the District of Columbia stated that discovery in FOIA cases is an "extraordinary practice." *Id.*

[58] It is also noteworthy that Appellant cited an article in which the use, capabilities, and legal restrictions are discussed, thereby (so argues the DSP) constituting an attempt to introduce "new facts" into the record on appeal. Appellant's Opening Br. at 3 n.2. The DSP asserts that Appellant himself has thereby sought to interject new facts into the record. The Court in any event will consider this article not for the purpose of expanding the record, but for the purpose of considering the policy arguments asserted in the underlying appeal insofar as they are supported by the facts in the record. *See infra* at Part IV.B.

should consider the issues and arguments raised by the United States in its Statement of Interest to the extent that any facts at issue in the declaration of Russell D. Hansen are not implicated."[59]

    B.  *Appellant's Citation to an Article in the* Harvard Journal of Law and Technology *in Its Opening Brief in the Substantive Appeal Will Not be Considered to the Extent it Relies on Facts Not Established in the Record Below*

In his Opening Brief, Appellant relies on a 2014 article, *Your Secret Stingray's No Secret Anymore: The Vanishing Government Monopoly over Cell Phone Surveillance and Its Impact on National Security and Consumer Privacy* by Stephanie K. Pell and Christopher Soghoian, published by the Harvard Journal of Law and Technology that discusses, generally, the use of cell-site simulators.[60] The DSP contended in its Answering Brief[61] and also in its October 31, 2016 Letter Brief that in doing so, Appellant was attempting to "introduce[] significant and erroneous 'new facts' into the record . . . not otherwise contained in the record [below]."[62]

The scope of this eighty-one page law review article is quite extensive:

> Part II of this Article begins by naming this "secret" surveillance technology and describing its capabilities. Part III goes on to address the limited Department of Justice ("DOJ") guidance and case law pertaining to this technology. Part IV discusses what appears to be a concerted effort by the U.S. government to prevent the public disclosure of information about this technology. Part V reveals, however, that the existence of the technology is both publicly known and acknowledged by governments in other countries. Part VI describes how foreign governments and

---

[59] Appellee's Letter Br. at 2.
[60] Appellant's Opening Br. at 3; Stephanie K. Pell & Christopher Soghoian, *Your Secret Stingray's No Secret Anymore: The Vanishing Government Monopoly over Cell Phone Surveillance and Its Impact on National Security and Consumer Privacy*, 28 HARV. J.L. & TECH. 1 (2014).
[61] Appellee's Ans. Br. at 32 n.4
[62] Appellee's Oct. 31, 2016 Letter Br. at 4.
.

criminals can and do use cellular surveillance equipment to exploit the vulnerabilities in phone networks, putting the privacy and security of Americans' communications at risk. Part VII argues that the public is paying a high price for the U.S. government's perpetuation of a fictional secrecy surrounding cell phone surveillance technology. Specifically, such fictional claims of secrecy prevent policymakers from publicly addressing the threats to the security of cellular communications. Part VIII argues that cellular network vulnerabilities should be addressed publicly in the larger cybersecurity policy process Congress is currently undertaking. Finally, Part IX examines possible technical avenues through which solutions could come.[63]

The article contains many factual assertions, far too numerous to list, not contained in the record below. Accordingly, as this is an appeal "on the record," the Court will not consider these factual assertions. However, to the extent the policy arguments contained in the article are supported by the facts contained in the record, the Court may consider the article.

C. *Remand to the Chief Deputy Attorney General is Not Appropriate*

The parties and this Court agree that it is not necessary to remand this matter to the Chief Deputy Attorney General, because such remand, assuming (without deciding) that such action is permitted by law, would unduly delay the matter.

## V. CONCLUSION

Therefore, the Court will **CONSIDER IN PART** and **NOT CONSIDER IN PART** the "Statement of Interest of the United States" in the underlying appeal. Nothing in this opinion precludes the parties from continuing to assert the arguments set forth in the original briefing.

**IT IS SO ORDERED.**

---

[63] Pell & Soghoian, *supra* note 57, at 8.

Additionally, the Court believes that supplemental briefing is necessary on three issues:

(1) Appellant contends in the underlying appeal that the standard of review in this FOIA appeal is "*de novo* review of law and facts."[64]  The Court is unsure of the position of the Division of State Police as to the applicable standard of review. The statute is silent on this issue.  The Court wishes the parties to address a) the potential applicability of the standard of review set forth in *Levitt v. Bouvier*,[65] or, b) if *Levitt* is thought not applicable, what other standard of review applies in this FOIA appeal.

(2) The Statement of Interest sets forth the United States' argument (which the Court assumes is adopted by the Division of State Police) that the disclosure of the information sought by Appellant is exempted by the federal FOIA, 5 U.S.C. § 552(b)(7)(E).  Exemption under federal statute may be contemplated in Delaware's FOIA at 29 *Del. C.* § 10002(l)(6).

(3) The Statement of Interest also sets forth the United States' position (which the Court assumes is adopted by the Division of State Police) that disclosure of the requested information is prohibited by the common law "law enforcement privilege."

---

[64] Appellant's Opening Br. at 14.  The "standard of review" differs from the "scope of review," discussed at pages 10-18 of this opinion, in that the "scope of review" is what evidence an appellate court can consider. *Delaware Appellate Handbook*, § 6.02, at 6-iv (2d ed. 1996).   By contrast, the "standard of review" pertains to how the reviewing court conducts its analysis of the facts and law, and typically sets forth the amount of deference to give to the previous adjudicator. *Id.* at 6-v.

[65] *Levitt v. Bouvier*, 287 A.2d 671 (Del. 1972) (holding that "if [facts] are sufficiently supported by the record and are the product of an orderly and logical deductive process, in the exercise of judicial restraint we accept them, even though independently we might have reached opposite conclusions."); *see also Baker v. Connell*, 488 A.2d 1303 (Del. 1985) (applying *Levitt v. Bouvier* to an appeal to the Superior Court from an administrative agency).

Appellant's Opening Letter Memorandum shall be due January 13, 2017; Appellee Division of State Police's Response due January 23; and Appellant's Reply due February 2.  Oral argument is scheduled for February 27 at 9:30 a.m.


/s/ Richard R. Cooch
Richard R. Cooch, R.J.


cc:  Prothonotary